**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO.:**

ERNEST GROSS and NICOLA GRAHAM,

       Plaintiffs,

v.

WAL-MART STORES, INC., a Delaware corporation,
authorized to do business in the State of Florida,
HENRY PAYOUTE, individually,
and CITY OF MIAMI GARDENS,

       Defendants.

_____/

## <u>COMPLAINT</u>

ERNEST GROSS ("PLAINTIFF GROSS") and NICOLA GRAHAM ("PLAINTIFF GRAHAM"), by and through their undersigned counsel, sue WAL-MART STORES, INC., ("DEFENDANT WAL-MART"), a Delaware corporation, authorized to do business in the State of Florida, HENRY PAYOUTE ("DEFENDANT PAYOUTE"), individually, and the CITY OF MIAMI GARDENS ("DEFENDANT CITY") and state:

    1)    This is an action for damages in excess of $75,000.00 dollars, exclusive of costs, interest, and attorney's fees, arising out of violations of federal law and state torts detailed below.

    2)    This action is brought pursuant to 42 U.S.C. § 1983, and the First, Fourth, and Fourteenth Amendments to the United States Constitution. Jurisdiction is founded on 28 U.S.C. §§ 1331, 1332, 1343 and 1367, 42 U.S.C. § 1988 and the constitutional provision mentioned above. PLAINTIFFS further invoke the supplemental jurisdiction of the United States District Court to hear pendant state tort claims arising under state law pursuant to 28 U.S.C. § 1367(a).

3)       Jurisdiction is also founded under 28 U.S.C. §1332, diversity of citizenship. This is a civil action between citizens of different states where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest, costs and attorneys' fees.

4)       The acts and practices constituting the violations alleged below occurred within the jurisdiction of the United States District Court, in and for the Southern District of Florida.

5)       At all times material hereto, DEFENDANT WAL-MART STORES, INC., was a Delaware corporation, authorized to do business in the State of Florida and was *sui juris*.

6)       DEFENDANT WAL-MART is a citizen of the state of Delaware.

7)       At all times material hereto, DEFENDANT PAYOUTE was over 18 years of age, *sui juris* and a police officer of the DEFENDANT CITY.

8)       At all times material hereto, PLAINTIFF GROSS was over 18 years of age, *sui juris,* and a citizen of the state of Florida.

9)       At all times material hereto, PLAINTIFF GRAHAM was the spouse of PLAINTIFF GROSS, over 18 years of age, *sui juris* and a citizen of the state of Florida*.*

10)      PLAINTIFFS presented their claims in writing to DEFENDANT CITY by means of a letter of demand for damages pursuant to the provisions of Florida Statute § 768.28 within three (3) years of the accrual of the cause of action.

11)      DEFENDANT CITY never made final disposition of the written claims of PLAINTIFFS within six (6) months of their presentation.

## FACTS

12)     On or about June 26, 2015, PLAINTIFF GROSS entered the WAL-MART store located at 19501 NW 27ᵗʰ Avenue, Miami Gardens, Florida 33056, for the purpose of purchasing goods and merchandise.

13)     PLAINTIFF GROSS was accompanied by his spouse PLAINTIFF GRAHAM.

14)     PLAINTIFFS GROSS and GRAHAM were invitees of DEFENDANT WAL-MART.

15)     After PLAINTIFFS GROSS and GRAHAM selected the items they wished to purchase, they proceeded through the checkout line where they paid in full for all purchases.

16)     Upon paying for the all the items, PLAINTIFFS were provided a sales receipt.

17)     After they were provided the sales receipt, PLAINTIFFS walked together toward the exit door of the store with the merchandise purchased.

18)     At no time did PLAINTIFF GROSS or PLAINTIFF GRAHAM possess any item not been paid for.

19)     At no time did either PLAINTIFF GROSS or PLAINTIFF GRAHAM display a furtive appearance or suspicious conduct.

20)     At no time did there exist any probable cause or reasonable suspicion to believe either PLAINTIFF GROSS or PLAINTIFF GRAHAM had shoplifted or taken any merchandise or good without paying for it.

21)     At no time did there exist any probable cause or reasonable suspicion to believe either PLAINTIFF GROSS or PLAINTIFF GRAHAM had committed any crime.

22)     At that time an employee of DEFENDANT WAL-MART or an employee of the security company [both hereinafter "security employee"] retained and contracted with by WAL-

MART, and acting as an agent for WAL-MART, called out to PLAINTIFF GROSS and demanded to see the sales receipt so PLAINTIFF GROSS could prove he had paid for the merchandise and did not steal the merchandise in his possession.

23)    The security employee made the demand to see the sales receipt as part of the routine practice and procedure of DEFENDANT WAL-MART and the security company.

24)    Other than making the demand pursuant to the routine practice and procedure of DEFENDANT WAL-MART and the security company, no one had any reason to suspect or believe PLAINTIFF GROSS or PLAINTIFF GRAHAM had committed any crime, including shoplifting or taking any merchandise or good without paying for it.

25)    As a result of the demand made by the said security employee, PLAINTIFF GROSS responded he paid for all the merchandise in his possession, he had not stolen anything and he declined to show his receipt.

26)    The receipt was in the possession of PLAINTIFF GRAHAM who was present.

27)    PLAINTIFF GROSS and PLAINTIFF GRAHAM continued to walk to exit the store retaining possession of the purchased items. PLAINTIFF GROSS was the one who was pushing the shopping cart which contained the purchased merchandise.

28)    At or about that time, DEFENDANT PAYOUTE who was working an off-duty detail for WAL-MART, overheard the communications between GROSS and the security employee.

29)    DEFENDANT PAYOUTE stopped and detained GROSS and directed GROSS to show the security employee the receipt. GROSS did not show the receipt.

30)     At no time did any buzzer, alarm, or anti-shoplifting detection device set off any signal or alarm suggesting an item was being or had been removed from the store that had not been paid for.

31)     At all times DEFENDANT PAYOUTE was dressed in a CITY police uniform showing he was a law enforcement officer of DEFENDANT CITY. He was displaying his official badge, insignia, and firearm.

32)     At no time did anyone, including any employee or agent of DEFENDANT WAL-MART or its subcontractors, ever communicate to DEFENDANT PAYOUTE that anyone had any suspicion that either PLAINTIFF GROSS or PLAINTIFF GRAHAM committed any crime within the store of DEFENDANT WAL-MART.

33)     DEFENDANT PAYOUTE confronted PLAINTIFF GROSS and demanded PLAINTIFF GROSS verify his purchases and told PLAINTIFF GROSS he was required to show his receipt to the employee and the requirement was also pursuant to WAL-MART policy. PAYOUTE detained GROSS and told GROSS he could not leave unless he showed the receipt.

34)     No sign was posted at any location stating customers must show receipts upon exiting.

35)     PLAINTIFF GROSS protested the actions taken by DEFENDANT PAYOUTE and complained verbally to him which could be heard by individuals within earshot.

36)     The protestations by PLAINTIFF GROSS were made in a normal voice without vulgarities, no threats were made, no fighting words were used and no request was made to anyone to engage or assist GROSS in any manner.

37)     PLAINTIFF GROSS declined to provide PAYOUTE with the receipt.

38)     At that time DEFENDANT PAYOUTE notified PLAINTIFF GROSS he was arresting PLAINTIFF GROSS.

39)     DEFENDANT PAYOUTE then handcuffed PLAINTIFF GROSS.

40)     DEFENDANT PAYOUTE arrested PLAINTIFF GROSS and placed PLAINTIFF GROSS into his patrol car.

41)     DEFENDANT PAYOUTE told PLAINTIFF GRAHAM that she was not free to leave unless she showed him the receipt and she was otherwise not free to leave.

42)     PLAINTIFF GRAHAM observed PLAINTIFF GROSS handcuffed in the rear of the police car and was concerned she would not be able to go home and care for their children unless she showed DEFENDANT PAYOUTE the receipt.

43)     Out of fear, because of coercion and against her will, PLAINTIFF GRAHAM provided the receipt to DEFENDANT PAYOUTE.

44)     Once DEFENDANT PAYOUTE reviewed the receipt and determined that all the merchandise had been paid for, DEFENDANT PAYOUTE permitted PLAINTIFF GRAHAM to leave.

45)     At about that time, DEFENDANT PAYOUTE told PLAINTIFF GROSS that he was going to jail despite the receipt having been provided because DEFENDANT PAYOUTE could not let PLAINTIFF GROSS show him up in front of everyone.

46)     DEFENDANT PAYOUTE placed PLAINTIFF GROSS under arrest for the crime of Disorderly Conduct, in violation of § 877.03, Florida Statutes. DEFENDANT PAYOUTE then took PLAINTIFF GROSS to the County Jail where he remained until he posted bond.

47)     Following the arrest of PLAINTIFF GROSS, DEFENDANT PAYOUTE prepared sworn and other documents including an Incident/Investigation Report containing false statements and material omissions with regard to his arrest of DEFENDANT GROSS for submission to prosecuting authorities.

48)     DEFENDANT PAYOUTE wrote in the documents:

NOTE: IT IS WAL-MART POLICY TO SHOW YOUR RECEIPT WHEN ASKED BY AN EMPLOYEE OR A SECURITY OFFICER.

49)     At all times material hereto, DEFENDANT PAYOUTE knew the said sworn and other reports he prepared would be relied upon by prosecuting authorities for the institution and continuation of criminal proceedings against PLAINTIFF GROSS.

50)     The sworn and other police reports regarding PLAINTIFF GROSS prepared by DEFENDANT PAYOUTE for submission to prosecuting authorities contained false statements, insofar as they falsely alleged PLAINTIFF GROSS committed the crime of disorderly conduct.

51)     At all times material hereto, it was clearly established "[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *City of Houston v. Hill,* 107 S.Ct. 2502, 2510 (1987).

52)     At all times material hereto, it was clearly established that speech is protected under the First Amendment as long as it does not physically obstruct the officer and is not "likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest." *Id.* at 2009-10.

53)     The State Attorney's Office filed a nolle prosequi on December 17, 2015.

54)     PLAINTIFF GROSS has never been convicted by any prosecuting authority of any criminal offense as a result of his arrest by DEFENDANT PAYOUTE.

55)     PLAINTIFF GRAHAM agreed to pay the undersigned a reasonable fee for his services, herein.

## SPECIFIC ALLEGATIONS WITH REGARD TO WAL-MART

56)     DEFENDANT PAYOUTE was at the WAL-MART store because he had been hired by DEFENDANT WAL-MART as an off-duty officer through the CITY to work as a security officer and he was being paid, directly or indirectly, by DEFENDANT WAL-MART to participate in, among other duties, DEFENDANT WAL-MART's loss prevention initiative.

57)     At all times material, DEFENDANT PAYOUTE acted in concert with DEFENDANT WAL-MART and as its employee, agent and servant.

58)     As part of the loss prevention initiative, DEFENDANT WAL-MART placed employees including security employees, law enforcement officers hired as security officers and subcontracted security employees at the entrances and exits of the store to request to check the sales receipts from patrons as they proceeded to exit the store to validate the purchases of the merchandise in the possession of patrons. Further, as part of that loss prevention initiative, DEFENDANT WAL-MART directed those employees to stop and detain patrons for that purpose.

59)     When DEFENDANT PAYOUTE confronted PLAINTIFF GROSS regarding GROSS not showing his receipt and subsequently arresting him, DEFENDANT PAYOUTE was following and adhering to the procedures, policies and instructions of DEFENDANT WAL-MART and he was

employed as a security officer by DEFENDANT WAL-MART from which he received monetary compensation.

60)     When DEFENDANT PAYOUTE confronted PLAINTIFF GRAHAM regarding showing her receipt and subsequently detaining her, DEFENDANT PAYOUTE was following and adhering to the procedures, policies and instructions of DEFENDANT WAL-MART and he was employed as a security officer by DEFENDANT WAL-MART from which he received monetary compensation.

61)     WAL-MART knew the law enforcement officers it hired as security officers would frequently stop a patron for not showing the sales receipt even if there was no evidence, indication, reasonable suspicion or probable cause the patron committed theft or any crime.

62)     Further, WAL-MART knew the law enforcement officers it hired as security officers would follow WAL-MART policy and demand patrons show their sales receipts when asked by an employee or a security officer. If a patron refused or did not show the receipt, WAL-MART knew the law enforcement officers it hired as security officers would detain the patron without legal cause.

63)     WAL-MART also knew the law enforcement officers it hired as security officers would prohibit the patron from leaving the store unless the patron showed the receipt. Further, WAL-MART knew the law enforcement officer would notify the person that WAL-MART policy mandated that the person display the receipt.

64)     WAL-MART knew if a patron refused to or did not show the receipt, it is illegal for a law enforcement officer or a security officer to detain the patron without legal cause and to also arrest the patron without legal cause where there was no evidence, indication, reasonable suspicion or probable cause that the patron committed theft or any crime.

65)     WAL-MART knew that law enforcement officers it hired as security officers did not know the failure of a patron to follow the WAL-MART policy was not a violation of law and the officers would detain patrons without legal cause because of a violation of the WAL-MART policy.

66)     Despite WAL-MART knowing those illegal detentions and arrests occurred or would occur, WAL-MART turned a blind eye to those actions of the officers or intentionally failed to advise the officers those actions were illegal.

## CAUSES OF ACTION

## COUNT 1

## FALSE ARREST/FALSE ARREST CLAIM BY PLAINTIFF GROSS AGAINST DEFENDANT CITY

For his cause of action against DEFENDANT CITY in Count 1, PLAINTIFF GROSS states:

67)     PLAINTIFF GROSS realleges and adopts, as if fully set forth in Count 1, the allegations of paragraphs 1 through 55.

68)     DEFENDANT PAYOUTE proximately caused PLAINTIFF GROSS' detention, imprisonment and arrest in the absence of probable cause or reasonable suspicion that PLAINTIFF GROSS committed any criminal offense and without any lawful authority.

69)     The actions of DEFENDANT PAYOUTE, in causing the arrest of PLAINTIFF GROSS, occurred in the absence of probable cause, reasonable suspicion and lawful authority. The actions of DEFENDANT PAYOUTE constitute false arrest/false imprisonment of PLAINTIFF GROSS under Florida law.

70)     The false arrest/false imprisonment of PLAINTIFF GROSS was committed by DEFENDANT PAYOUTE in the course and scope of his employment as a police officer of DEFENDANT CITY.

71)      As a direct and proximate result, PLAINTIFF GROSS further suffered physical injury, expenses of traveling to court, and loss of his freedom, suffered loss of his liberty and freedom, mental anguish, loss of income, attorney expenses, costs of bond and defense, and loss of capacity for the enjoyment of life. He suffered grievously, was brought into public scandal with great humiliation, endured mental suffering and aggravation of his physical and mental condition and suffered a damaged reputation.

WHEREFORE, PLAINTIFF GROSS prays:

a)      Judgment for compensatory damages in excess of $ 75,000 dollars against DEFENDANT CITY;

b)      Cost of suit;

c)      Trial by jury as to all issues so triable; and

d)      Such other relief as this Honorable Court may deem just and appropriate.

## COUNT 2

### FALSE ARREST/FALSE ARREST CLAIM BY PLAINTIFF GROSS AGAINST DEFENDANT WAL-MART

For his cause of action against DEFENDANT WAL-MART in Count 2, PLAINTIFF GROSS states:

72)     PLAINTIFF GROSS realleges and adopts, as if fully set forth in Count 2, the allegations of paragraphs 1 through 55 and 56 through 66.

11

73)     DEFENDANT PAYOUTE proximately caused PLAINTIFF GROSS' detention, imprisonment and arrest in the absence of probable cause or reasonable suspicion that PLAINTIFF GROSS committed any criminal offense and without any lawful authority.

74)     The actions of DEFENDANT PAYOUTE, in causing the arrest of PLAINTIFF GROSS occurred in the absence of probable cause and lawful authority. The actions of DEFENDANT PAYOUTE constitute false arrest/false imprisonment of PLAINTIFF GROSS under Florida law.

75)     Alternatively to the allegations in Count 1, if the detention, imprisonment and arrest of PLAINTIFF GROSS was committed by DEFENDANT PAYOUTE while in the course and scope of his employment as a security officer for DEFENDANT WAL-MART, by virtue of it hiring DEFENDANT PAYOUTE as an off-duty police officer to provide security at its business, then DEFENDANT PAYOUTE was acting as an agent and employee of DEFENDANT WAL-MART.

76)     As a direct and proximate result PLAINTIFF GROSS further suffered physical injury, expenses of traveling to court, and loss of his freedom, suffered loss of his liberty and freedom, mental anguish, loss of income, attorney expenses, costs of bond and DEFENSE, and loss of capacity for the enjoyment of life. He suffered grievously, was brought into public scandal with great humiliation, endured mental suffering and aggravation of his physical and mental condition and suffered a damaged reputation.

WHEREFORE, PLAINTIFF GROSS prays:

a)     Judgment for compensatory damages in excess of $ 75,000 dollars against DEFENDANT WAL-MART;

b)     Judgment for exemplary damages against DEFENDANT WAL-MART;

c)      Cost of suit;

d)      Trial by jury as to all issues so triable; and

e)      Such other relief as this Honorable Court may deem just and appropriate.


## COUNT 3

### 42 U.S.C. § 1983 VIOLATION OF CIVIL RIGHTS CLAIM (FOURTH AMENDMENT) BY PLAINTIFF GROSS AGAINST PAYOUTE

For his cause of action against DEFENDANT PAYOUTE in Count 3, PLAINTIFF GROSS states:

77)     PLAINTIFF GROSS realleges and adopts, as if fully set forth in Count 3, the allegations of paragraphs 1 through 55.

.     78)     DEFENDANT PAYOUTE proximately caused PLAINTIFF GROSS' arrest in the absence of probable cause that PLAINTIFF GROSS committed any criminal offense and in violation of his clearly established rights under the Fourth Amendment and 42 U.S.C. § 1983.

79)     At all times material, DEFENDANT PAYOUTE acted under the color of the statutes, customs, ordinances and usage of the State of Florida in the course and scope of employment as a police officer of DEFENDANT CITY.

80)     As a direct and proximate result of the acts described above, PLAINTIFF GROSS suffered great humiliation, mental suffering, and damaged reputation, including business reputation/goodwill.

81)     As a further direct and proximate result of the conduct of DEFENDANT PAYOUTE, PLAINTIFF GROSS suffered loss of his liberty and freedom, mental anguish, loss of income,

attorney expenses, costs of DEFENSE, and loss of capacity for the enjoyment of life. PLAINTIFF

GROSS' losses are either permanent or continuing and PLAINTIFF GRAHAM will suffer the losses

in the future, in violation of PLAINTIFF GRAHAM's civil rights.

WHEREFORE, PLAINTIFF GRAHAM prays:

a) Judgment for compensatory damages in excess of $ 75,000 dollars against

DEFENDANT PAYOUTE;

b) Judgment for exemplary damages against DEFENDANT PAYOUTE;

c) Cost of suit;

d) Reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

e) Trial by jury as to all issues so triable; and

f) Such other relief as this Honorable Court may deem just and appropriate

## COUNT 4

### 42 U.S.C. § 1983 VIOLATION OF CIVIL RIGHTS CLAIM (FIRST AMENDMENT) BY PLAINTIFF GROSS AGAINST DEFENDANT PAYOUTE

For his cause of action against DEFENDANT PAYOUTE in Count 4, PLAINTIFF GROSS

states:

82) PLAINTIFF GROSS realleges and adopts, as if fully set forth in Count 4, the

allegations of paragraphs 1 through 55.

83) DEFENDANT PAYOUTE proximately caused PLAINTIFF GROSS' arrest in the

absence of probable cause that PLAINTIFF GROSS committed any criminal offense.

84)     The conduct of DEFENDANT PAYOUTE towards PLAINTIFF GROSS, as set forth herein, was in retaliation for PLAINTIFF GROSS' protected speech regarding the detention by DEFENDANT PAYOUTE and demands of DEFENDANT PAYOUTE and the security employee that PLAINTIFF GROSS produce his receipt, and occurred in the absence of probable cause that PLAINTIFF GROSS committed any criminal offense. *Davis v. Williams,* 451 F.3d 759, 767 (11th Cir. 2006).

85)     The arrest of PLAINTIFF GROSS occurred in the absence of probable cause that PLAINTIFF GROSS committed any criminal offense, and would likely deter a person of ordinary firmness from the exercise of First Amendment rights.

86)     The conduct of DEFENDANT PAYOUTE towards PLAINTIFF GROSS constitutes unlawful retaliation in violation of PLAINTIFF GROSS' clearly established rights under the First and Fourteenth Amendments, and 42 U.S.C. § 1983.

87)     The conduct of DEFENDANT PAYOUTE towards PLAINTIFF GROSS occurred in the course and scope of employment under color of the statutes, customs, ordinances and usage of the State of Florida in the course and scope of employment as a police officer of DEFENDANT CITY.

88)     As a direct and proximate result of the acts described above, PLAINTIFF GROSS suffered great humiliation, mental suffering, and damaged reputation, including business reputation/goodwill.

89)     As a further direct and proximate result of the conduct of DEFENDANT PAYOUTE, PLAINTIFF GROSS suffered loss of his liberty and freedom, mental anguish, loss of income, attorney expenses, costs of DEFENSE, and loss of capacity for the enjoyment of life. PLAINTIFF

GROSS' losses are either permanent or continuing and PLAINTIFF GROSS will suffer the losses in the future, in violation of PLAINTIFF GROSS' civil rights.

WHEREFORE, PLAINTIFF GROSS prays:

a)      Judgment for compensatory damages in excess of $ 75,000 dollars against DEFENDANT PAYOUTE;

b)      Judgment for exemplary damages against DEFENDANT PAYOUTE;

c)      Cost of suit;

d)      Reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

e)      Trial by jury as to all issues so triable; and

f)      Such other relief as this Honorable Court may deem just and appropriate.

## COUNT 5

### FALSE ARREST/FALSE ARREST CLAIM BY PLAINTIFF GRAHAM AGAINST DEFENDANT CITY

For her cause of action against DEFENDANT CITY in Count 5, PLAINTIFF GRAHAM states:

90)     PLAINTIFF GRAHAM realleges and adopts, as if fully set forth in Count 5, the allegations of paragraphs 1 through 55.

91)     DEFENDANT PAYOUTE proximately caused PLAINTIFF GRAHAM's detention, imprisonment and arrest in the absence of probable cause that PLAINTIFF GRAHAM committed any criminal offense and without any lawful authority.

92)     The actions of DEFENDANT PAYOUTE, in causing the detention, imprisonment and arrest of PLAINTIFF GRAHAM occurred in the absence of probable cause and lawful authority.

The actions of DEFENDANT PAYOUTE constitute false arrest/false imprisonment of PLAINTIFF GRAHAM under Florida law.

93)     The false arrest/false imprisonment of PLAINTIFF GRAHAM was committed by DEFENDANT PAYOUTE in the course and scope of employment as a police officer of DEFENDANT CITY.

94)      As a direct and proximate result PLAINTIFF GRAHAM further suffered loss of her freedom and liberty, mental anguish, and loss of capacity for the enjoyment of life. She suffered grievously and endured mental suffering and aggravation of her physical and mental condition.

WHEREFORE, PLAINTIFF GRAHAM prays:

a)      Judgment for compensatory damages in excess of $ 75,000 dollars against DEFENDANT CITY;

b)      Cost of suit;

c)      Trial by jury as to all issues so triable; and

d)      Such other relief as this Honorable Court may deem just and appropriate.


## COUNT 6

## FALSE ARREST/FALSE ARREST CLAIM BY PLAINTIFF GRAHAM AGAINST DEFENDANT WAL-MART

For her cause of action against DEFENDANT WAL-MART in Count 6, PLAINTIFF GRAHAM states:

95)     PLAINTIFF GRAHAM realleges and adopts, as if fully set forth in Count 6, the allegations of paragraphs 1 through 55 and 56 through 66.

17

96)     DEFENDANT PAYOUTE proximately caused causing the detention, imprisonment and arrest of PLAINTIFF GRAHAM in the absence of probable cause that PLAINTIFF GRAHAM committed any criminal offense and without any lawful authority.

97)     The actions of DEFENDANT PAYOUTE, in causing the detention, imprisonment and arrest of PLAINTIFF GRAHAM occurred in the absence of probable cause and lawful authority. The actions of DEFENDANT PAYOUTE constitute false arrest/false imprisonment of PLAINTIFF GRAHAM under Florida law.

98)     Alternatively to the allegations in Count 5, if the detention, imprisonment and arrest of PLAINTIFF GRAHAM was committed by DEFENDANT PAYOUTE while in the course and scope of his employment as a security officer for DEFENDANT WAL-MART, by virtue of it hiring DEFENDANT PAYOUTE as an off-duty police officer to provide security at its business, then DEFENDANT PAYOUTE was acting as an agent and employee of DEFENDANT WAL-MART.

99)      As a direct and proximate result PLAINTIFF GRAHAM further suffered loss of her freedom and liberty, mental anguish, and loss of capacity for the enjoyment of life. She suffered grievously and endured mental suffering and aggravation of her physical and mental condition.

WHEREFORE, PLAINTIFF GRAHAM prays:

a)      Judgment for compensatory damages in excess of $ 75,000 dollars against DEFENDANT WAL-MART;

b)      Exemplary damages against DEFENDANT WAL-MART;

c)      Cost of suit;

d)      Trial by jury as to all issues so triable; and

e)      Such other relief as this Honorable Court may deem just and appropriate.

18

## COUNT 7

## 42 U.S.C. § 1983 VIOLATION OF CIVIL RIGHTS CLAIM (FOURTH AMENDMENT) BY PLAINTIFF GRAHAM AGAINST DEFENDANT PAYOUTE

For her cause of action against DEFENDANT PAYOUTE in Count 7, PLAINTIFF GRAHAM states:

100)     PLAINTIFF GRAHAM realleges and adopts, as if fully set forth in Count 7, the allegations of paragraphs 1 through 55.

101)     DEFENDANT PAYOUTE proximately caused PLAINTIFF GRAHAM's arrest in the absence of probable cause that PLAINTIFF GRAHAM committed any criminal offense and in violation of her clearly established rights under the Fourth Amendment and 42 U.S.C. § 1983.

102)     The conduct of DEFENDANT PAYOUTE towards PLAINTIFF GRAHAM occurred in the course and scope of employment under color of the statutes, customs, ordinances and usage of the State of Florida in the course and scope of employment as a police officer of DEFENDANT CITY.

103)     As a direct and proximate result of the acts described above, PLAINTIFF GRAHAM suffered great humiliation and, mental suffering.

104)     As a further direct and proximate result of the conduct of DEFENDANT PAYOUTE, PLAINTIFF GRAHAM suffered loss of her liberty and freedom, mental anguish, and loss of capacity for the enjoyment of life. PLAINTIFF GRAHAM's losses are either permanent or continuing and PLAINTIFF GRAHAM will suffer the losses in the future, in violation of PLAINTIFF GRAHAM's civil rights.

WHEREFORE, PLAINTIFF GRAHAM prays:

a)      Judgment for compensatory damages in excess of $ 75,000 dollars against DEFENDANT PAYOUTE;

b)      Judgment for exemplary damages against DEFENDANT PAYOUTE;

c)      Cost of suit;

d)      Reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

e)      Trial by jury as to all issues so triable; and

f)      Such other relief as this Honorable Court may deem just and appropriate

## COUNT 8

### DERIVATIVE CLAIM OF PLAINTIFF GRAHAM AGAINST DEFENDANT CITY

For her cause of action against DEFENDANT CITY in Count 8, PLAINTIFF GRAHAM states:

105)    PLAINTIFF GRAHAM realleges and adopts as if fully set forth in Count 8, the allegations of paragraphs 1-55.

106)    At all times material hereto, PLAINTIFF GRAHAM was and is the lawful wife of PLAINTIFF GROSS.

107)    As a direct and proximate result of the actions of DEFENDANT CITY as alleged in Count 1, PLAINTIFF GRAHAM suffered and will continue to suffer the loss of her husband's services, support, consortium, and the comfort and the care of his society.

WHEREFORE, PLAINTIFF GRAHAM prays:

a)      Judgment for compensatory damages from all DEFENDANT CITY in excess of $75,000 dollars;

b)      Costs of suit;

c)      Trial by jury as to all issues so triable; and

d)      Such other relief as this Honorable Court may deem just and appropriate.


## COUNT 9

## DERIVATIVE CLAIM OF PLAINTIFF GRAHAM AGAINST DEFENDANT PAYOUTE

For her cause of action against DEFENDANT PAYOUTE in Count 9, PLAINTIFF GRAHAM states:

108)    PLAINTIFF GRAHAM realleges and adopts as if fully set forth in Count 9, the allegations of paragraphs 1 through 55.

109)    At all times material hereto, PLAINTIFF GRAHAM was and is the lawful wife of PLAINTIFF GROSS.

110)    As a direct and proximate result of the actions of DEFENDANT PAYOUTE as alleged in Counts 3 and 4, PLAINTIFF GRAHAM suffered and will continue to suffer the loss of her husband's services, support, consortium, and the comfort and the care of his society.

WHEREFORE, PLAINTIFF GRAHAM prays:

a)      Judgment for compensatory damages from DEFENDANT PAYOUTE in excess of $75,000 dollars;

b)      Judgment for exemplary damages against DEFENDANT PAYOUTE;

d)      Costs of suit;

e)      Trial by jury as to all issues so triable; and

f)      Such other relief as this Honorable Court may deem just and appropriate.

## COUNT 10

### DERIVATIVE CLAIM OF PLAINTIFF GRAHAM AGAINST DEFENDANT WAL-MART

For her cause of action against DEFENDANT WAL-MART in Count 10, PLAINTIFF GRAHAM states:

111)    PLAINTIFF GRAHAM realleges and adopts as if fully set forth in Count 10, the allegations of paragraphs 1 through 55 and 56 through 66.

112)    At all times material hereto, PLAINTIFF GRAHAM was and is the lawful wife of PLAINTIFF GROSS.

113)    As a direct and proximate result of the actions of DEFENDANT WAL-MART as alleged in Count 2, PLAINTIFF GRAHAM suffered and will continue to suffer the loss of her husband's services, support, consortium, and the comfort and the care of his society.

WHEREFORE, PLAINTIFF GRAHAM prays:

a)      Judgment for compensatory damages from DEFENDANT WAL-MART in excess of $75,000 dollars;

b)      Judgment for exemplary damages against DEFENDANT WAL-MART;

d)      Costs of suit;

e)      Trial by jury as to all issues so triable; and

f)      Such other relief as this Honorable Court may deem just and appropriate.

## COUNT 11

## FAILURE TO TRAIN AND SUPERVISE CLAIM BY PLAINTIFF GROSS AGAINST DEFENDANT CITY

For his cause of action against DEFENDANT CITY, in Count 11 PLAINTIFF GROSS states:

114)    PLAINTIFF GROSS realleges and adopts, as if fully set forth in Count 11 the allegations of paragraphs 1 through 55.

115)    The negligent failure of the DEFENDANT CITY to supervise and train its police officers was a direct causal link, caused, actually caused, or was closely related to the to the arrest and prosecution of PLAINTIFF GROSS in the absence of probable cause or any legal reason and was taken in the absence of lawful authority.

116)    CITY knew that its police officers did not understand that there was no legal requirement that a patron leaving a store with items show their receipt unless there was reasonable suspicion that the patron had failed to pay for any item in their possession.

117)    CITY knew that its police officers did not understand that a law enforcement officer did not have the legal authority to stop and detain a patron exiting a store unless there was reasonable suspicion that the patron had failed to pay for any item in their possession.

118)    As a direct and proximate result of the acts described above and the allegations in Count 1, PLAINTIFF GROSS was injured in and about his body and extremities, suffered pain therefrom, suffered physical handicaps and his working abilities were impaired. The injuries are either permanent or continuing in nature and he will suffer the losses and impairment in the future. He suffered loss of his liberty and freedom, mental anguish, loss of income, loss of abilities to earn money, loss of earnings and costs of bond.

119)     As a further direct and proximate result, PLAINTIFF GROSS suffered grievously, been brought into public scandal and with great humiliation, mental suffering and damaged reputation. As a further direct and proximate result PLAINTIFF GROSS suffered loss of capacity for the enjoyment of life, and loss of his freedom.

WHEREFORE, PLAINTIFF GROSS prays:

a)     Judgment for compensatory damages against DEFENDANT CITY in excess of $ 15,000 dollars;

b)     Cost of suit;

c)     Trial by jury as to issues so triable; and

d)     Such other relief as this Honorable Court may deem just and appropriate.

## COUNT 12

### FAILURE TO TRAIN AND SUPERVISE CLAIM BY PLAINTIFF GROSS AGAINST DEFENDANT WAL-MART

For his cause of action against DEFENDANT WAL-MART, in Count 12, PLAINTIFF GROSS states:

120)     PLAINTIFF GROSS realleges and adopts, as if fully set forth in Count 12, the allegations of paragraphs 1 through 55 and 56 through 66.

121)     The negligent failure of DEFENDANT WAL-MART to supervise and train off-duty police officers it hires as security officers and as its agents and employees was a direct causal link, caused, actually caused, or was closely related to the arrest and prosecution of PLAINTIFF GROSS in the absence of probable cause or any legal reason and was taken in the absence of lawful authority.

24

122)    WAL-MART knew that off-duty police officers it hires as security officers did not understand that there was no legal requirement that a patron leaving its premises with items show their receipt unless there was reasonable suspicion that the patron had failed to pay for any item in their possession.

123)    WAL-MART knew that off-duty police officers it hires as security officers did not understand that an employee or agent of WAL-MART including a security officer and a law enforcement officer did not have the legal authority to stop and detain a patron exiting its premises unless there was reasonable suspicion that the patron had failed to pay for any item in their possession.

124)    As a direct and proximate result of the acts described above and the allegations in Count 2, PLAINTIFF GROSS was injured in and about his body and extremities, suffered pain therefrom, suffered physical handicaps and his working abilities were impaired. The injuries are either permanent or continuing in nature and he will suffer the losses and impairment in the future. He suffered loss of his liberty and freedom, mental anguish, loss of income, loss of abilities to earn money, loss of earnings and costs of bond.

125)    As a further direct and proximate result, PLAINTIFF GROSS suffered grievously, been brought into public scandal and with great humiliation, mental suffering and damaged reputation. As a further direct and proximate result PLAINTIFF GROSS suffered loss of capacity for the enjoyment of life, and loss of his freedom.

WHEREFORE, PLAINTIFF GROSS prays:

a)    Judgment for compensatory damages against DEFENDANT WAL-MART in excess of $75,000 dollars;

b)      Judgment for exemplary damages against DEFENDANT WAL-MART

c)      Cost of suit;

d)      Trial by jury as to issues so triable; and

e)      Such other relief as this Honorable Court may deem just and appropriate.

## COUNT 13

### FAILURE TO TRAIN AND SUPERVISE CLAIM BY PLAINTIFF GRAHAM AGAINST DEFENDANT CITY

For her cause of action against DEFENDANT CITY, in Count 13, PLAINTIFF GRAHAM states:

126)    PLAINTIFF GRAHAM realleges and adopts, as if fully set forth in Count 13, the allegations of paragraphs 1 through 55.

127)    The negligent failure of DEFENDANT CITY to supervise and train its police officers was a direct causal link, caused, actually caused, or was closely related to the arrest and detention of PLAINTIFF GRAHAM in the absence of probable cause or any legal reason and was taken in the absence of lawful authority.

128)    CITY knew that its police officers did not understand that there was no legal requirement that a patron leaving a store with items show their receipt unless there was reasonable suspicion that the patron had failed to pay for any item in their possession.

129)    CITY knew that its police officers did not understand that a law enforcement officer did not have the legal authority to stop and detain a patron exiting a store unless there was reasonable suspicion that the patron had failed to pay for any item in their possession.

130)     As a  direct and proximate result, PLAINTIFF GRAHAM suffered grievously, been brought into public scandal and with great humiliation, mental suffering, loss of capacity for the enjoyment of life, and loss of her freedom and liberty.

WHEREFORE, PLAINTIFF GRAHAM prays:

a)     Judgment for compensatory damages against DEFENDANT CITY in excess of $ 15,000 dollars;

b)     Cost of suit;

c)     Trial by jury as to issues so triable; and

d)     Such other relief as this Honorable Court may deem just and appropriate.

## COUNT 14

### FAILURE TO TRAIN AND SUPERVISE CLAIM BY PLAINTIFF GRAHAM AGAINST DEFENDANT WAL-MART

For her cause of action against DEFENDANT WAL-MART, in Count 14, PLAINTIFF GRAHAM states:

131)     PLAINTIFF GRAHAM realleges and adopts, as if fully set forth in Count 14, the allegations of paragraphs 1 through 55 and 56 through 66.

132)     The negligent failure of DEFENDANT WAL-MART to supervise and train off-duty police officers it hires as security officers and as its agents and employees was a direct causal link, caused, actually caused, or was closely related to the arrest and detention of PLAINTIFF GRAHAM in the absence of probable cause or any legal reason and was taken in the absence of lawful authority

.     133)     WAL-MART knew that off-duty police officers it hires as security officers did not understand that there was no legal requirement that a patron leaving its premises with items show

their receipt unless there was reasonable suspicion that the patron had failed to pay for any item in their possession.

134)    WAL-MART knew that off-duty police officers it hires as security officers did not understand that an employee or agent of WAL-MART including a security officer and a law enforcement officer did not have the legal authority to stop and detain a patron exiting its premises unless there was reasonable suspicion that the patron had failed to pay for any item in their possession.

135)    As a direct and proximate result, PLAINTIFF GRAHAM suffered grievously, been brought into public scandal and with great humiliation, mental suffering, loss of capacity for the enjoyment of life, and loss of her freedom and liberty.

WHEREFORE, PLAINTIFF GRAHAM prays:

a)      Judgment for compensatory damages against DEFENDANT WAL-MART in excess of $ 75,000 dollars;

b)      Judgment for exemplary damages against DEFENDANT WAL-MART

c)      Cost of suit;

d)      Trial by jury as to issues so triable; and

e)      Such other relief as this Honorable Court may deem just and appropriate.

GARY KOLLIN, P.A.
1856 N. Nob Hill Road, Suite 140
Ft. Lauderdale, FL 33322
Telephone:    (954) 723-9999
Fax:          (954) 791-6565
garykollin@garykollinlaw.com
pleadings@garykollinlaw.com

By: /s/ Gary Kollin
Florida Bar No. 282431